NOT FOR PUBLICATION (Doc. No. 49)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEPHEN MATHIES, | : |
| Plaintiff, | : |
| | : Civil No. 04-2882 (RBK/AMD) |
| v. | : |
| | : **OPINION** |
| SETH SILVER and MARIA MARTINEZ, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises from the surgical repair of Plaintiff's ruptured Achilles tendon by Defendant Seth Silver, M.D., in 2001 while Plaintiff Stephen Mathies was an inmate at a federal detention center. Plaintiff claims that he was injured because Dr. Silver performed the procedure improperly. Although Plaintiff filed his Complaint in June 2004, he did not serve Dr. Silver until July 2010, and he has yet to complete service as required by Rule 4(i)(3) by properly serving the United States. Presently before the Court is Dr. Silver's motion pursuant to Federal Rule of Civil Procedure 12 to dismiss the Complaint for insufficient service of process, lack of personal jurisdiction, and failure to state a claim. Because Plaintiff has yet to complete service pursuant to Federal Rule of Civil Procedure 4, and because the Court has granted Plaintiff numerous extensions of time to complete service over the last six years, the Court dismisses Plaintiff's Complaint for failure to complete service of process.

I.      BACKGROUND

   A. Factual Allegations

Plaintiff alleges that on July 14, 2001, he ruptured his Achilles tendon while incarcerated at the Federal Correctional Institute in Fairton, New Jersey ("FCI Fairton"). On August 28, 2001, Dr. Silver performed reconstructive surgery to repair the tendon. After the surgery, Dr. Silver placed Plaintiff's leg in a fiberglass "long-leg" cast. (Compl., at 4). In September 2001, Dr. Silver put Plaintiff's leg in a "short-leg" cast and told Plaintiff that he had a fifty percent "area of break down" on his wound. (Id. at 4-5). By October 2001, the wound was infected and fluid was leaking from the cast. Dr. Silver made a "window" in the cast to drain the fluid. (Id. at 5). Plaintiff claims that the wound became infected because of fiber in the "long-leg" cast and because Dr. Silver did not allow for proper drainage. (Id. at 4-5). Plaintiff further alleges that his Achilles tendon "was so infected that it will not heal," and that subsequent tests show that the wound contracted certain bacteria. Plaintiff claims that he requires corrective "follow-up" surgery to avoid becoming "perman[en]tly disabled." (Id. at 5). Plaintiff asserts that Dr. Silver's conduct amounts to deliberate indifference to his medial needs in violation of the Eighth Amendment's proscription against cruel and usual punishment.

The original Complaint also asserted a claim against Maria Martinez, a "physician's assistant." (Id. at 6). Plaintiff claims that on October 20, 2001, he asked Ms. Martinez to see "Dr. Morales" for emergency care regarding the infection, but Ms. Martinez refused to allow Plaintiff to immediately see Dr. Morales. (Id.). Plaintiff saw a doctor three days later. Plaintiff also alleges that he complained about Ms. Martinez's conduct, and, in retaliation, she "changed [his] medical treatment without authorization from the surgeon," and refused him clean

2

"dressing" for his wound. (Id.). Plaintiff alleges that before bringing suit in this Court, he filed various administrative claims and an "Administrative Tort Claim."[1] (Id. at 5).

**B.  Procedural History**

Plaintiff initiated this action by filing the Complaint in June 2004 pursuant to <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971),[2] naming Dr. Silver and Ms. Martinez as Defendants.[3] In September 2005, the clerk forwarded blank summonses to Plaintiff. On October 5, 2005, Plaintiff sent a letter to the Court stating that he had attempted to serve Defendants. Plaintiff attached copies of "return of service" forms and inquired of the Court as to whether it was necessary for him to "re-do" service. (Doc. No. 5). The "return of service forms" were not signed and did not include an affirmation that Plaintiff served Defendants. On February 6, 2006, because Plaintiff had not properly served Defendants, the clerk issued a notice of call for dismissal informing Plaintiff that the Court may dismiss the case for failure to prosecute pursuant to Federal Rule of Civil Procedure 41.1(a). In response, Plaintiff submitted a letter to the Court stating that he "sent out to Defendants Notice of Complaint." On February 24, 2006, the Court found that Plaintiff failed to comply with Rule 4's service requirements, but the Court withdrew the call for dismissal and extended Plaintiff's time

---

[1] In opposition to Dr. Silver's motion to dismiss, Plaintiff submits medical documentation providing additional detail and facts regarding his treatment at FCI Fairton. Because, as discussed below, the Court grants Dr. Silver's motion to dismiss for failure to complete service of process, the Court need not and does not address the propriety of considering that evidence on a pre-answer motion to dismiss.

[2] Plaintiff initially filed his Complaint on June 21, 2004, along with an application to proceed <u>in forma pauperis</u>. The Court denied Plaintiff's application to proceed <u>in forma pauperis</u> on July 8, 2004. After Plaintiff paid the filing fee, the clerk formally filed the Complaint on July 16, 2004. Thus, for purposes of Rule 4(m), the time for service of the Complaint began to run on July 16, 2004. See <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1148-49 (10th Cir. 2006) (holding that Rule 4(m)'s 120-day period for service of process is tolled while a motion to proceed <u>in forum pauperis</u> is pending).

[3] A <u>Bivens</u> action allows a plaintiff to sue a federal defendant who, acting under federal law, deprived plaintiff of a constitutional right. <u>Bivens</u> actions are analogous, but not identical, to actions against individuals acting under the color of state law under 42 U.S.C. § 1983. See <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978) (reasoning that, "without congressional directions to the contrary," it would "stand the constitutional design on its head" if federal officials were not liable for constitutional violations through <u>Bivens</u> actions to the same extent as state officials are through § 1983 actions).

3

to file proof of service until March 24, 2006, which was well beyond the 120-days provided by Rule 4(m). The Court noted in its order that Plaintiff was required to complete service pursuant to Rule 4.

Following that extension, Plaintiff sent the Court a letter dated March 16, 2006, in which he attached: (1) summonses, unsigned by the Clerk of Court, for Ms. Martinez and Dr. Silver; (2) a signed certified mail receipt addressed to Ms. Martinez at her work address; and (3) an unsigned certified mail receipt addressed to Dr. Silver, indicating that he no longer resided at the address provided. In an Order dated May 15, 2006, the Court found that Plaintiff had again failed to comply with Rule 4's service requirements. However, after considering Plaintiff's pro se status and the complexities of Rule 4's service requirements, the Court exercised its discretion and extended Plaintiff's time to effectuate service until July 16, 2006, which was <u>exactly</u> two years after Plaintiff's Complaint was filed for purposes of Rule 4(m).

In addition to extending Plaintiff's time to complete service under Rule 4, the Court's May 15, 2006 Order also provided a step-by-step tutorial regarding the relevant requirements of service under Rule 4. The Court explained that Plaintiff could not serve Ms. Martinez or Dr. Silver by certified mail, that the Clerk of the Court must sign the summonses, and that pursuant to Rule 4(i)(2)(B),[4] Plaintiff was required to serve <u>both</u> the individual Defendants and the United States. The Order further explained that, pursuant to Rule 4(i)(1), to properly serve the United States, Plaintiff was required to send a copy of the summons and complaint to the United States Attorney for the district in which the action was brought and the Attorney General of the United States. The Court unequivocally stated in its Order that Plaintiff had failed to properly serve the United States, Ms. Martinez, and Dr. Silver, and that Plaintiff should complete service by July 16, 2006.

---

[4] The 2007 amendments to the Federal Rules of Civil Procedure moved Rule 4(i)(3) to Rule 4(i)(4).

Following the Court's extension of time and detailed review of Rule 4's service requirements, Plaintiff sent the Court a letter dated May 26, 2006, stating that he had completed service on the United States by certified mail. Plaintiff enclosed certified mail receipts addressed to the Attorney General of the United States and the United States Attorney's Office in Camden, New Jersey and a copy of an unsigned summons. In June 2006, Ms. Martinez made a motion to dismiss on the grounds that the Court lacked jurisdiction over her due to improper service of process and the expiration of time to serve under Rule 4(m). Ms. Martinez argued, among other things, that Plaintiff's service was improper because Plaintiff failed to serve the United States with a complete summons signed by the Clerk and impressed with the Court's seal. At the time Ms. Martinez moved to dismiss, Plaintiff had failed to serve her for almost one year after filing the Complaint.

In March 2007, the Court granted Ms. Martinez's motion to dismiss. The Court explained that not only was Plaintiff's service of Ms. Martinez by certified mail improper, but Plaintiff's service on the United States was insufficient because Plaintiff served the United States with "an incomplete summons." (Doc. No. 16, at 7). In dismissing Plaintiff's claims against Ms. Martinez, the Court evaluated whether Plaintiff should be given additional time to cure those service deficiencies. The Court found that an extension was unwarranted because Plaintiff did not demonstrate "good cause" for his failure to timely and properly serve Ms. Martinez and the United States. (Id.).

On April 13, 2007, the Court issued a notice of call for dismissal informing Plaintiff that the Court may dismiss Plaintiff's remaining claim against Dr. Silver for failure to prosecute pursuant to Federal Rule of Civil Procedure 41.1(a). Plaintiff opposed the dismissal notice claiming that he had requested assistance from the Clerk in signing the summonses and from the

United States Marshals Service in serving the summonses. On April 27, 2007, the Court dismissed the action against Dr. Silver due to Plaintiff's failure to prosecute.

Plaintiff appealed the Court's dismissal of Ms. Martinez and Dr. Silver. In January 2008, the United States Court of Appeals for the Third Circuit affirmed the dismissal as to Ms. Martinez but vacated the dismissal as to Dr. Silver. See Mathies v. Silver, 266 F. App'x. 138, 138-39 (3d Cir. 2008). Regarding Ms. Martinez, the Third Circuit affirmed the Court's dismissal because Plaintiff failed to serve Ms. Martinez with a "signed and sealed summons." Id. at 140. The Court held that when a Plaintiff serves an unsigned and unsealed summons, "'it becomes unnecessary for the district courts to consider such questions as whether service was properly made, or whether an extension to the 120-day service period should be granted under Rule 4(m).'" Id. at 140 (quoting Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996)). Thus, the Third Circuit upheld dismissal of Ms. Martinez because Plaintiff had not served her with adequate process.

Regarding Dr. Silver, the Third Circuit found that the Court did not adequately weigh the six factors set out in Poulis v. State Farm Fire & Casualty Ins., 747 F.2d 863, 868 (3d. Cir. 1984), for dismissal based on failure to prosecute under Local Civil Rule 41.1(a). The Third Circuit therefore vacated the Court's Order dismissing Plaintiff's Complaint against Dr. Silver and remanded the matter for "proceedings consistent with this opinion." Mathies, 266 F. App'x. at 140. The Third Circuit did not address whether dismissal of Plaintiff's Complaint against Dr. Silver was proper for failure to comply with Rule 4's service requirements.

In May 2008, following the Third Circuit's reinstatement of the Complaint, Plaintiff requested that the Court appoint pro bono counsel.[5] The Court granted Plaintiff's request for pro

---

[5] In June 2008, Plaintiff filed a second Complaint containing the exact same allegations regarding Dr. Silver but removing the allegations regarding Ms. Martinez. It was unnecessary for Plaintiff to file a second Complaint following the Third Circuit reinstatement of his original Complaint. In any event, the allegations are the same

6

bono counsel in December 2008, and the Clerk of the Court sent Plaintiff contact information for his appointed counsel in January 2009. Plaintiff's appointed counsel made a formal appearance on March 2, 2009. The record does not show that Plaintiff or his counsel made any attempt to serve Dr. Silver or the United States after the Third Circuit reinstated Plaintiff's Complaint in January 2009.

On January 21, 2010, more than one year after the Court appointed counsel and nine months after counsel filed a formal appearance on Plaintiff's behalf, Plaintiff sent a letter to Magistrate Judge Donio stating:

> I am writing your Honor, concerning your appointment of counsel. The lawyer that has been appointed to my case[] contacted me about one year ago, telling me that he would review the case and then come to see me after he investigate [sic] the case file and interview the staff here at F.C.I. Fairton. I have yet to hear from him . . .

The letter further states that Plaintiff believed he suffered further "reprisals" during his detention and that he sought a restraining order to protect himself from future harm. Magistrate Judge Donio forwarded the letter to Plaintiff's counsel on February 19, 2010. Plaintiff's counsel did not file any proof of service or make any filing in the case in response to Plaintiff's letter. On June 24, 2010, Plaintiff again sent a letter to Magistrate Judge Donio stating that even after Magistrate Judge Donio sent Plaintiff's counsel a copy of Plaintiff's January 21, 2010 letter, Plaintiff still had not "heard from" his assigned counsel. Plaintiff therefore requested that Magistrate Judge Donio assign new counsel.

On June 28, 2010, because Plaintiff had failed to prosecute his case, the Court noticed the case for dismissal for failure to prosecute on July 22, 2010. The next day, on June 29, 2010, Magistrate Judge Donio forwarded Plaintiff's June 24, 2010 letter to his counsel and requested

---

regarding Dr. Silver in both documents and Plaintiff does not argue that the refiling of his Complaint restarted the time for service under Rule 4(m).

that counsel respond to Plaintiff's letter within fourteen days.  On July 14, 2010, Plaintiff's counsel sent a letter to Magistrate Judge Donio stating that counsel had "attempted to contact [Plaintiff] at FCI Fairton but have not yet had success."  Counsel's letter attached an email dated July 13, 2010, approximately fourteen days after Judge Donio's request that Counsel take action within fourteen days, from counsel's assistant to someone at FCI Fairton stating that counsel "must meet with his client as soon as possible" and requesting that FCI Fairton arrange a meeting.  Counsel finally met with Plaintiff on July 19, 2010.  On July 20, 2010, more than eighteen months after being appointed to represent Plaintiff, Plaintiff's counsel finally filed a request for the issuance of a summons for Dr. Silver.[6]  On that same day, counsel submitted an affidavit stating that "[a]fter some period of difficulty in making contact with Mr. Mathies, I was able to meet with him . . . on Monday July 19, 2010." (Aff. of William M. Tambussi dated July 20, 2010, ¶ 2).  On July 21, 2010, Plaintiff filed proof that Dr. Silver was served by hand delivery on July 20, 2010. (Doc. No. 44).  Plaintiff's proof of service makes no mention of any attempt to serve the United States.  In light of counsel's activity in the case, the Court withdrew its call for dismissal.

After Plaintiff served Dr. Silver, Dr. Silver made the instant motion to dismiss the Complaint for failure to serve process within 120 days of filing the Complaint as required by Rule 4(m) and failure to state a claim under Rule 12(b)(6).  Dr. Silver argues that: (1) the Complaint is untimely because Plaintiff filed it after the two-year statute of limitations expired; (2) Plaintiff failed to exhaust his administrative remedies; and (3) Plaintiff does not allege facts sufficient to establish deliberate indifference to his medical condition.  Plaintiff responds that: (1) there is good cause to excuse his failure to timely serve Dr. Silver; (2) the discovery rule tolls

---

[6] An affidavit from counsel suggests that counsel first became aware of Plaintiff's failed attempts to serve Dr. Silver during his July 19, 2010 meeting with Plaintiff. (Doc. No. 41).

the two-year statute of limitations; (3) he sufficiently pleads deliberate indifference to his medical condition; and (4) he is not required to plead exhaustion of administrative remedies in order to survive a motion to dismiss under Rule 12(b)(6).  Both sides have submitted their respective briefs and the motion is ripe for review.

**II.     DISCUSSION**

    **A.  Service of the United States Under Rule 4(i)**

Federal Rule of Civil Procedure 12(b) allows a defendant to file a motion to dismiss for a plaintiff's insufficient service of process in accordance with Rule 4.  Boley v. Kaymark, 123 F.3d 756, 757 (3d Cir.1997).  Rule 4 provides specific service procedures for claims against federal officers and employees in their individual capacity.  See Fed. R. Civ. P. 4(i)(3).[7]  Rule 4(i)(3) requires that a plaintiff suing federal employees in their individual capacity serve both the United States pursuant to Rule 4(i)(1) and the individual defendants pursuant to Rules 4(e), (f), or (g).  Rule 4(i)(1) provides that a plaintiff must deliver a copy of the summons and the complaint by certified mail to:  (1) "the civil-process clerk at the United State attorney's office" for the district where the action is brought; and (2) the Attorney General of the United States in Washington, D.C.

Because "Bivens only authorizes suit against federal officials in their individual capacities," Plaintiff must complete service pursuant to Rule 4(i)(3).[8]  Warren v. United States,

---

[7] As noted earlier, the 2007 amendments to the Federal Rules of Civil Procedure redesignated Rule 4(i)(2)(B) as Rule 4(i)(3).  Both versions of the rule require service of individual defendants as well as the United States when a plaintiff sues federal employees or officers in their individual capacity.  Thus, at all times during this litigation, Plaintiff was required to serve both Dr. Silver and the United States.

[8] Dr. Silver submits an Affidavit stating that he was an independent contractor for FCI Fairton.  The Court notes that there is some disagreement among courts as to whether a Plaintiff may sue an independent contractor under Bivens. See O'Neil v. Anderson, 372 F. App'x. 400, 404 (4th Cir. 2010); Bellecourt v. United States, 784 F. Supp. 623, 628 (D. Minn. 1992) (holding that a plaintiff could sue a doctor under contract with the federal Bureau of Prisons pursuant to Bivens); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 79 n.6 (2001) (Stevens, J., dissenting) (discussing this issue).  The Third Circuit has not yet addressed the issue.  See Franco-Calzada v. United States, 375 F. App'x. 217, 219 (3d Cir. 2010) (noting the issue but declining to address it).  It is unnecessary for the Court to address the issue here because Plaintiff has not completed service under Rule 4.

279 F. App'x. 162, 163 (3d Cir. 2008) (holding that Bivens authorizes suit only against federal officials in their individual capacity); see Kurzberg v. Ashcroft, 619 F.3d 176, 178 (2d Cir. 2010) (holding that a plaintiff suing under Bivens must complete service pursuant to Rule 4(i)(3)); Wadhwa v. Nicholson, No. 07-3301, 2009 U.S. Dist. LEXIS 35462, at *10-11 (E.D. Pa. Apr. 24, 2009) (same); see also Cromety v. Elkton Fed. Corr. Inst., No. 05-518, 2006 U.S. Dist. LEXIS 11912, at *8-9 (N.D. Ohio Mar. 22, 2006) (noting that service in Bivens action requires service on the United States and individual defendants pursuant pre-2007 version of Rule 4(i)(3)). Moreover, an individual defendant in a Bivens action may move to dismiss the claims against him based on the Plaintiff's failure to properly serve the United States. See Kurzberg, 619 F.3d at 178-79 (upholding dismissal of Bivens claim for failure to properly serve the United States where the United States was not a party to the action and the individual defendants moved for failure to serve the United States). Indeed, service on an individual defendant is not complete until the plaintiff properly serves the United States pursuant to Rule 4(i). See Graham v. Sequatchie Cnty. Gov't, No. 10-20, 2011 U.S. Dist. LEXIS 19488, at *3-4 (E.D. Tenn. Feb. 28, 2011) (holding that individual defendants were not in default even though the plaintiff served them individually pursuant to Rule 4(e) because the plaintiff failed to serve the United States pursuant to Rule 4(i) and the defendants therefore had no obligation to respond to the complaint). Service under Rule 4 is defective if the plaintiff serves either the United States or the individual defendant with a summons that is not signed by the clerk of the court. See Fed. R. Civ. P. 4(a)(1)(F) (requiring that summons be "signed by the clerk"); Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996) (holding that an unsigned summons is defective process); see also Turner v. United States, 203 F. App'x. 952, 954 (11th Cir. 2006) ("Here,

although [the plaintiff] properly served the complaint on the Attorney General by certified mail, he did not include a summons, thereby failing to effect service pursuant to Rule 4.").

Applying Rule 4 to this case, it is clear that Plaintiff has still, more than six years after filing his Complaint and after multiple extensions and detailed instructions from the Court, not properly completed service under Rule 4. Although Plaintiff served Dr. Silver with a signed summons and complaint pursuant to Rule 4(e) on July 20, 2010, Plaintiff's July 21, 2010 affidavit of service does not affirm that he served both Dr. Silver and the United States as required by Rule 4(i)(3). Moreover, Plaintiff's May 26, 2006 letter to the Court, which is the only proof of service regarding the United States, provides that in 2006, Plaintiff sent copies of a summons and complaint by certified mail to the Attorney General of the United States and an Assistant United States Attorney for the District of New Jersey. However, the summons that Plaintiff sent to the United States was unsigned. Even if the Court accepts Plaintiff's May 26, 2006 letter as proof of service under Rule 4(*l*)(1),[9] Plaintiff did not complete proper service on the United States as required by Rule 4(i) because he did not serve the United States with a signed summons. Indeed, the Court made this same finding more than four years ago when it dismissed Ms. Martinez because Plaintiff failed to properly serve the United States. (Doc. No. 16, at 7). Thus, notwithstanding Plaintiff's belated service of Dr. Silver, Plaintiff has still not completed service pursuant to Rule 4 such that he can proceed with his Bivens claim against Dr. Silver.[10] See Graham, 2011 U.S. Dist. LEXIS 19488, at *3-4.

---

[9] Rule 4(l)(1) requires proof of service in the form of an affidavit.

[10] The requirement that a plaintiff suing federal employees in their individual capacity serve the United States is not a mere technicality, especially in a Bivens action. Because Congress has not waived sovereign immunity in the Bivens context, a Plaintiff may not sue the United States for damages suffered as a result of Eighth Amendment violations. FDIC v. Meyer, 510 U.S. 471, 485 (1994). Thus, the United States will not, as a matter of course, receive formal notice of a duly filed claim against a federal employee. Nevertheless, a Bivens action clearly implicates federal interests because it is based on "an act or omission" committed during the employees's duties for the United States, and, consequently, the United States may provide representation for the employee if the Attorney General determines that such representation would be in the interest of the United States. See 28 C.F.R. § 50.15(a)

### B.  "Good Cause" for Extension of Time to Serve under Rule 4(i)(4) and Rule 4(m)

Rule 4(m) requires that a plaintiff complete service of process within 120 days from filing the complaint.  If a defendant is not served within 120 days after the complaint is filed, the court on motion or on its own after notice to the plaintiff must dismiss the action without prejudice or order that service be made within a specified time.  Fed. R. Civ. P. 4(m).  Before dismissing a case for insufficient service of process, the Court must first determine whether "good cause" exists for an extension of time.  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305-06 (3d Cir. 1995).  The burden of establishing good cause rests with the plaintiff.  Mason v. Therics, Inc., No. 08-2404, 2009 U.S. Dist. LEXIS 551, at *5-6 (D.N.J. Jan. 6, 2009).

Inadvertence, half-hearted efforts, and misplaced reliance do not constitute good cause under Rule 4(m).  Petrucelli 46 F.3d at 1307.  Good cause exists where there is a demonstration of good faith by the party seeking an enlargement and some reasonable basis for non-compliance within the time specified in the rules.  MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (citing Petrucelli, 46 F.3d at 1312).  Some of the factors courts examine in determining whether good cause exists include: (1) the reasonableness of the plaintiff's efforts to serve; (2) the prejudice that may befall a defendant as a consequence of untimely service; (3) whether the applicable statutes of limitations will likely bar the plaintiff from refiling his claims; and (4) whether plaintiff moved for an enlargement of time to serve.  Id.

Significantly, the Advisory Committee's Notes to Rule 4(m) state that Rule 4(i)(4)

---

(stating that the government will provide representation if the Attorney General determines "that providing representation would otherwise be in the interest of the United States"); see also Meyer, 510 U.S. at 486 (recounting party's argument that "the Federal Government . . . expends significant resources indemnifying its employees who are sued under Bivens").  Rule 4(i)(3) is therefore designed to help "expedite the process of determining whether the United States will provide representation" for federal employees sued as a result of act stemming from their official duties.  Fed. R. Civ. P. 4, 2000 Advisory Committee Notes, 2000 Amendment.  "Service of process on the United States . . . protects the interest of the United States in choosing whether to provide representation to an individual defendant."  Kurzberg, 619 F.3d at 186.  Plaintiff's failure to serve the United States with formal process undermines that objective.

provides a "specific instance of good cause."[11]  Fed. R. Civ. P. 4, 1993 Advisory Committee Notes.  Rule 4(i)(4) provides that "the court must allow a party a reasonable time to cure its failure to" properly serve the United States if the party has properly served the necessary individual defendants.  The Advisory Committee's Notes state that Rule 4(i)(4) requires "a reasonable amount of time to effect service on the United States . . . after the failure is pointed out."  Thus, the clock begins to run on the "reasonable amount of time" afforded a plaintiff to serve the United States once the court or another party notifies the plaintiff of a defect in service.  See Kurzberg, 619 F.3d at 184.

       The record in this matter clearly demonstrates that Plaintiff received multiple extensions of time to complete service and that further extensions are unwarranted.  Plaintiff has received various notices from the Court that he is required to serve the United States pursuant to Rule 4(i) and that service of an unsigned summons is defective.  Moreover, the Court specifically informed Plaintiff in its Opinion dismissing Ms. Martinez that his attempted service on the United States in May 2006 was defective because the summons was unsigned.  Indeed, that was one of the reasons that the Court dismissed Ms. Martinez.  In addition to those notifications, the Court also granted Plaintiff two extensions of time to serve Dr. Silver.  Those extensions enlarged Plaintiff's time to serve Dr. Silver to a period of two years from the date he filed the Complaint.  The Court's May 2006 Order also provided Plaintiff with clear instructions regarding relevant service requirements under Rule 4.  Notwithstanding all of those accommodations, Plaintiff has still not completed service under Rule 4 by properly serving the United States.

---

[11] Rule 4(i)(4) was introduced as Rule 4(i)(3) as part of the 1993 amendments to the Rules.  The 2007 amendments to the Rules moved Rule 4(i)(3) to Rule 4(i)(4).

The Court is aware that once it dismissed the Complaint, Plaintiff could not obtain a signed summons from the clerk until the Third Circuit reinstated the Complaint. Additionally, the Court notes that Plaintiff made a motion to appoint counsel immediately after the Third Circuit reinstated his Complaint, and a motion to appoint counsel operates as an equitable toll on Rule 4(m)'s 120-day service requirement. See Robinson v. Dott, No. 10-260, 2011 U.S. Dist. LEXIS 18324, at *1 (S.D. Miss. Feb. 24, 2011) ("the 120 day period under Rule 4(m) is tolled pending consideration of in forma pauperis and appointment of counsel"). However, those subsequent events do not change the fact that even before the Court dismissed Plaintiff's Complaint under Rule 41(b) for failure to prosecute, the Court gave Plaintiff two extensions of time to complete service, gave Plaintiff specific instructions regarding Rule 4's service requirements, and informed Plaintiff that his attempted service on the United States was defective because the summons was unsigned. Any further extension of time is therefore unwarranted.

Additionally, even after the Third Circuit reinstated the Complaint and Plaintiff's counsel took action, neither Plaintiff nor his counsel made any attempt to properly serve the United States. Even a cursory review of the Orders and Opinions issued by this Court reveal that following the Third Circuit's reinstatement of the Complaint, Plaintiff was still required to serve a signed summons on both the United States and Dr. Silver. Yet, neither counsel nor Plaintiff took any steps to properly serve the United States. This enormous and continuing delay in completing Rule 4's service requirements is, by any measure, unreasonable under Rule 4(i)(4).

Plaintiff makes much of the fact that he initially represented himself in this matter. He requests that the Court recognize his good-faith lay efforts to complete service under Rule 4 and grant him additional time to complete service. See Olsen v. Mapes, 333 F.3d 1199,

1205 (10th Cir. 2003) (noting that pro se litigants should be afforded leniency regarding Rule 4's service requirements). However, for the first two and a half years of this litigation the Court was extraordinarily lenient regarding Plaintiff's own attempts to effectuate service of process. The Court gave Plaintiff two extensions and a step-by-step tutorial on Rule 4's service requirements. Moreover, after the Third Circuit reinstated Plaintiff's Complaint, the Court granted Plaintiff's request for the appointment of counsel, and, notwithstanding counsel's seeming failure to timely pursue Plaintiff's case, the Court dismissed its 2010 notice of call for dismissal and Plaintiff was able to meet with his attorney regarding the case. However, even with those accommodations, Plaintiff still failed to complete service on Dr. Silver pursuant to Rule 4(i)(3). Under these circumstances, the Court, in its discretion, determines that Plaintiff is not entitled to any additional extensions of time. If Rule 4's service requirements are to have any meaningful effect on litigants' expectations and behavior, there must be some end to their lenient application. At some point, the Court cannot offer any more exceptions or extensions. After more than six years of failing to serve Dr. Silver pursuant to Rule 4(i)(3), Plaintiff has reached that point.

Finally, the Court is mindful that the statute of limitations may bar Plaintiff from refiling his claims against Dr. Silver. Although that factor usually weighs in favor of extending the service period, the Court finds that the opposite is true under the circumstances of this case. Statutes of limitations are intended to encourage "rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence." Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005). Thus, "[t]he principal reason for statutes of limitations is to provide notice to defendants." Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151 (3d Cir. 2001). Dr. Silver has certified that he first learned about Plaintiff's claims against him when Plaintiff finally served him in July 2010, more than six years after Plaintiff filed his

Complaint and more than nine years after Plaintiff's alleged injury. Dr. Silver is correct that it would be unfair to allow Plaintiff such an extraordinary extension of time to complete service because such an extension of Rule 4's service requirements would effectively result in a six year tolling of the statute of limitations.[12] In light of the regular two-year statute of limitations applicable to Plaintiff's claims, it would be unfair to require Dr. Silver to defend such an old claim by granting Plaintiff another extension of time to serve. See Brown v. Camden Cnty. Counsel, No. 10-1098, 2010 U.S. App. LEXIS 9826, at *10 (3d Cir. May 13, 2010) (holding that the statute of limitations for a Bivens claim brought in New Jersey is two years).

### III.     CONCLUSION

For the foregoing reasons, Dr. Silver's motion to dismiss is **GRANTED**. An appropriate order shall enter today.


Dated: 6/8/2011                                             /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge

---

[12] This assumes (for argument only) Plaintiff's position that the discovery rule applies in this case and that it tolled the two-year statute of limitations until April 24, 2003.

16